# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## (BID PROTEST)

**SH SYNERGY, LLC,**

    *Plaintiff,*

v.

**United States,**

    *Defendant.*

Case No. __22-1466 C__

Judge _____

## COMPLAINT

Plaintiff SH Synergy, LLC, ("SHS") files this solicitation protest against the United States of America, and shows the Court as follows:

### Nature of the Action

1.    The United States General Services Administration ("GSA" or "Agency") issued Solicitation Nos. 47QTCB22R0001 (the "Small Business Pool Solicitation") and 47QTCB22R0003 (the "WOSB Pool Solicitation") (collectively, the "Solicitations") for the Agency's Polaris government-wide acquisition contract ("GWAC").

### The Parties

2.    SHS is a limited liability company headquartered in Colorado.

3.    The United States of America, for all purposes relevant hereto, acted by and through GSA.

## Jurisdiction and Standing

4. The Court has subject-matter jurisdiction over this bid protest under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996. 28 U.S.C. § 1491(b)(1).

5. SHS is an "interested party." It is a woman owned small business ("WOSB") (and small business). SHS is an actual offeror on the WOSB Solicitation and a prospective offeror on the Small Business Solicitation, so it has a direct economic interest that would be affected by the award of the contract under the Solicitations.[1]

6. Further, absent the errors alleged in this complaint, SHS suffers from a non-trivial competitive injury which can be redressed by judicial relief. It is therefore prejudiced by the Solicitations, which contain restrictions that are arbitrary, irrational, and contrary to law.

## Factual Background

### The Solicitation

7. On March 25, 2022, the Agency issued the Solicitations anticipating award of an indefinite-delivery, indefinite-quantity ("IDIQ") contract. The due date set for receipt of proposals is October 7, 2022. A conformed copy of the Solicitations is attached hereto.

8. The purpose of the Solicitations is to provide customized Information Technology ("IT") services and IT services-based solutions to federal agencies. (Solicitations, p. 3.)

9. The Agency amended the SB Pool Solicitation seven times. It published Amendment 0007 on September 20, 2022.

---

[1] SHS has uploaded but not submitted its offer in response to the Small Business Pool Solicitation and is ready, willing, and able to compete. SHS has submitted a proposal on the WOSB pool.

10. The Agency does not intend to evaluate offeror proposals against other offerors. Rather, the Agency intends only to evaluate offers against themselves.

11. The Solicitation consists of self-scoring, after which the Agency will evaluate and validate it. (Solicitations, p. 66, 95–97 / 96–98.) ("Failure to tag supporting documentation may result in an inability of the government to validate claimed scoring.")

12. The Agency also does not intend to evaluate price, pursuant to 41 U.S.C. § 3306(c) and Agency Class Deviation CD-2020-14.

13. The Agency will award contracts to the Highest Technically Rated Qualifying ("HTRQ") offerors. (*Id.*) So, the Agency will not perform a trade-off analysis at any point during the evaluation.

14. Instead, the Solicitations say the evaluation will begin with "ranking the proposals from highest claimed score to lowest total claimed score" with a pre-determined number being considered at Preliminary Qualifying Proposal ("PQP").[2]

15. Next, the Agency will next conduct a screening process of the PQPs to verify documentation for the evaluation elements submitted to the portal.

16. The Agency will then verify whether the PQPs met the Acceptability Review requirements. (*Id.*) The Agency will dock unsubstantiated points from an offeror's score and re-sort the list. (*Id.*)

---

[2] For the Small Business Pool, the pre-determined number is 100 awards (and ties); for the WOSB Pool, the pre-determined number is 70 awards (and ties).

17.     If a docked score still meets the pre-determined threshold, the offeror will remain a PQP; if not, the offeror would be removed and the next-in-line offeror would be added to the PQP.

18.     Once the Agency's evaluation of the pre-determined number of offerors is complete, the evaluations will make awards would be announced.  (*Id*., p. 93-94.)

19.     The SB Pool Solicitation restricts mentors from proposing more than one mentor-protégé in a pool.  In Question and Response ("Q&R") Number 4, the Agency said:

> **Question 292**: We request the Government consider a situation in which a small business with an existing Mentor Protégé Joint Venture approved in October 2021, has a situation in which the large business has been acquired by another company. Will the Government please allow the acquiring company (who already had another Mentor-Protégé Joint Venture in place and intends to bid on the Small Business Pool) to participate in multiple proposals as long as no projects are used more than in one proposal under the Solicitation Pool?
>
> **Response 292**: Please refer to SBA Regulations at 13 CFR 125.9(b)(3)(i), a mentor that has more than one protégé cannot submit competing offers in response to a solicitation for a specific procurement through separate joint ventures with different protégés.

(Q&R No. 4, p. 7.)  The Questions and Responses are attached hereto.

20.     Additionally, the Solicitation anticipates the award of fixed-price, cost-reimbursement, incentive contract, time and materials, and / or labor hour task orders. (Solicitation, pp. 4, 117.)

21.     Under Section L.5.3.1, the Solicitation allows offerors to form a joint venture to submit a bid provided that it meets several requirements. (Solicitation, p. 67–68.)  Among other requirements, the Solicitation provides the following condition for SBA mentor-protégé joint venture offerors: "a minimum of one Primary Relevant Experience Project or Emerging

4

Technology Relevant Experience Project must be from the Protégé or the offering Mentor-Protégé Joint Venture. No more than three Primary Relevant Experience Projects may be provided by the Mentor." (Solicitation, p. 67.)

22. The Solicitation says that "OCOs [Ordering Contracting Officers] have complete discretion in selecting the Pool under which fair opportunity is provided." (Solicitation, p. 29.) The Solicitation also provides that the "Fair Opportunity process shall be *specific to the individual Pool being competed, and may not be combined with any other Polaris Pools* (SB, HUBZone, WOSB, [woman-owned small business]) or any other socio-economic GWAC vehicles outside of the Polaris contract family, as contract terms and conditions will vary." (*Id*.) (emphasis supplied.)

## COUNT ONE
### THE SOLICITATIONS VIOLATE APPLICABLE SBA REGULATIONS BY LIMITING THE NUMBER OF MENTOR-PROTÉGÉ JOINT VENTURES THAT CAN SUBMIT PROPOSALS

23. SHS realleges and incorporates the allegations of the preceding paragraphs by reference as if fully set forth herein.

24. In pre-award bid protests, the Federal Circuit has said that a reviewing court must determine whether "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed.Cir.2009).

25. In Q&R 4, the Agency said it would not allow a protégé's mentor to propose other mentor-protégé joint ventures in the same Solicitation pool. The Agency said, "a mentor that has more than one protégé **cannot submit competing offers** in response to a solicitation for a

specific procurement through separate joint ventures with different protégés." (Q&R No. 4 at p. 7.) (citing 13 C.F.R. § 125.9.) (emphasis supplied.).

26.     In this procurement, however, companies are not submitting "competing offers" at the IDIQ level. Rather, the Agency is evaluating each offer on its own merits.

27.     The offerors will submit proposals based on self-scoring of their own experience, past performance, systems, certifications, and clearances, and organizational risk assessment. (Solicitation 93-95.) The scoring table is set forth on Solicitation pages 95 to 97.

28.     After receiving proposals, the Agency will verify whether offerors have submitted specific information. (Solicitation, p. 93.) Next, the Agency will compile a list of offers based on each offeror's self-scoring. (Solicitation., p. 92, 93.) That is, the evaluation begins with "ranking the proposals in order from highest total claimed score to lowest total claimed score." (*Id.*) The Agency will evaluate the top self-scored proposals to validate each offeror's score as PQPs. (*Id*. p. 92.) If the Agency disagrees with an offeror's self-scoring, it will adjust the offeror's points. (*Id.*) If the proposal does not remain a PQP, the Agency will select the next claimed score and conduct the above assessment. (*Id.*)

29.     The Solicitation says the Agency will continue that process until it reaches the maximum number of apparent successful offerors. In the event of a tie, the Agency will make awards to all companies with tying scores. (*Id.*, p. 93.) So, if fifty companies receive the same score at the 100th position, the Agency will make award to all that pass the responsibility assessment. (*Id.*) In other words, the Polaris competition, to the extent it even exists, is with each offeror **itself**. That is the meaning of the Agency's selected best value methodology, "Highest Technically Rated Qualifying Offerors. (*Id.*, p. 91.)

30. And the Agency is not evaluating price at all—the Solicitation invokes 41 U.S.C. § 3306(c) and Agency Class Deviation CD-2020-14, which deletes price as an evaluation criterion. (Solicitation, pp. 91, 92.) Because the Agency never assesses proposals against each other, there are no "competing offers."

31. In a competition with "competing offers," bidders typically respond to technical requirements by crafting a written proposal. The procuring agency would then evaluate the technical responses using their experience and reasoned judgment (often subjective) to arrive at an adjectival evaluation rating, followed by a tradeoff and award. Here there is no written technical proposal addressing complex IT requirements and no tradeoff. In fact, because price is not a factor and because there is no tradeoff, the Solicitation does not involve "competing offers" within the meaning of 13 C.F.R. § 125.9.

32. Here, the rule, while inapplicable at the IDIQ level, would apply at the task order level, where agencies are selecting awardees based on a comparative assessment of price and non-price factors. At that point, "competing offers" are present. And there, offerors and agencies can avoid "competing offers" by invoking the rule.

33. Moreover, the Agency's application of the rule ignores the respective rights of mentors and protégés. The primary purpose of SBA's Mentor-Protégé Program is to assist and "improve the protégé firms' ability to successfully compete for federal contracts." *See* 13 C.F.R. § 125.9(a).

34. Mentors do not control mentor-protégé joint ventures. 13 C.F.R. §§ 125.8 and 125.9 set forth the rules governing mentor-protégé joint ventures. Under these rules, the protégé is the managing partner (or "venturer"). 13 C.F.R. § 125.8(b)(2)(ii). The managing venturer must own at least 51% of the joint venture entity. 13 C.F.R. § 125.8(b)(2)(iii). And the

managing venturer controls the day-to-day management and administration of the contractual performance of the joint venture, not other partners to the joint venture.  13 C.F.R. § 125.8(b)(2)(ii)(A).

35. While the mentor has a say in the joint venture's decisions, it does not have control over the joint venture.  That extends to the decision whether to submit a proposal in response to a solicitation—particularly those that encompass as much work as does Polaris.

36. Additionally, the number of SBA-approved mentors and small business protégés is limited and protégés often must enter joint ventures with mentors who have other small business protégés.  If a mentor has more than one protégé, the Agency's application of the rule allows only one of the potentially three joint ventures to bid on the Solicitations.  This prevents the other protégés from competing for an award.

37. Here, because SHS's mentor has three protégés, the Agency's rule prohibits SHS from proposing on the SB Pool Solicitation.[3]  SHS suffers as a result of the Agency's unreasonable application of law—it is forced to ride the bench with no ability to participate in the game for prime task order opportunities worth billions.  It is therefore prejudiced.

### COUNT TWO
### THE SOLICITATION'S PAST PERFORMANCE REQUIREMENTS VIOLATE SBA REGULATIONS

38. SHS realleges and incorporates the allegations of the preceding paragraphs by reference as if fully set forth herein.

---

[3] The Agency's response to Question 4 is not a model of clarity.  It is unknown whether the Agency intends to limit participation of mentor-protégé joint ventures on all of the Polaris efforts or just to one per particular pool.

39. The Solicitation violates SBA rules regarding experience and past performance.

40. First, the Solicitation requires mentor-protégé joint ventures to submit an example of experience on its own while not requiring the same of any other offeror. This unlawfully and arbitrarily holds mentor-protégé joint ventures to a higher standard than other offerors.

41. The Solicitation says that for mentor-protégé joint ventures, "a minimum of one Primary Relevant Experience Project or Emerging Technology Relevant Experience Project must be from the Protégé or the offering Mentor-Protégé Joint Venture." (Solicitation, p. 67.) The Solicitation does not require other prime offerors to meet this requirement.

42. Sections 125.8(e) and 126.507(f) are similar: the former says "[a] procuring activity may not require the protégé firm to individually meet the same evaluation or responsibility criteria as that required of other offerors generally" and the latter, the WOSB regulation, says "[a] procuring activity may not require the EDWOSB or WOSB small business concern to individually meet the same evaluation or responsibility criteria as that required of other offerors generally." Both regulations also make clear that "[t]he **partners** to the joint venture in the aggregate must demonstrate the past performance, experience, business systems and certifications necessary to perform the contract." 13 C.F.R. §§ 125.8(e), 126.507(f).

43. By requiring the protégé to furnish one Primary Relevant Experience Project or Emerging Technology Relevant Experience Project in its own name, while also not requiring other prime offerors to meet this heightened evaluation standard, the Solicitation violates SBA's prohibition on requiring protégés from "individually meet[ing] the same evaluation or responsibility criteria as that required of other offerors generally." 13 C.F.R. §§ 125.8(e), 126.507(f). This is antithetical to the SBA Mentor-Protégé Program which, specifically allows

protégés to form joint ventures with their mentors so that they can bid on opportunities the protégé would otherwise would not be able to win on their own.

44. Second, the Agency unlawfully requires protégés to furnish their own past performance.

45. 13 C.F.R. § 125.2(g) allows protégés to submit mentor past performance as if it were their own. It provides that agencies

> must consider the capabilities, past performance, and experience of each first tier subcontractor that is part of the team <u>as</u> the capabilities, past performance, and experience of the small business prime contractor <u>if</u> the capabilities, past performance, and experience of the small business prime **does not independently demonstrate** capabilities and past performance necessary for award.

(Emphasis supplied).

46. Similarly, 13 C.F.R. § 125.8(e) prohibits agencies from requiring protégés to provide their own past performance. It says:

> A procuring activity **may not require the protégé firm to individually meet the same evaluation or responsibility criteria as that required of other offerors generally**. The partners to the joint venture in the aggregate must demonstrate the past performance, experience, business systems and certifications necessary to perform the contract.

(Emphasis supplied.)

47. Again, the Solicitation mandates that the protégé or mentor-protégé joint venture furnish one Primary Relevant Experience Project or Emerging Technology Relevant Experience Project, yet it does not account for SBA's rule which allows the capabilities, past performance, and experience of a first-tier small subcontractor to <u>count as the</u> capabilities, past performance, and experience of the small business offeror where it does not have that experience necessary for

10

award. Because the Solicitation does not allow (or expressly say that) the mentor-protégé joint venture can meet this requirement with the experience of its first-tier subcontractor, the Solicitation violates 13 C.F.R. § 125.2(g).

48. As a result of the Agency's rules, mentor-protégé joint ventures must scramble to find additional past performance and experience references beyond what other firms must provide and what is required by law. SHS may not have such references. If so, it will not be able to obtain a sufficient self-score to be among the top bidders. It is therefore prejudiced.

### COUNT THREE
### THE SOLICITATION REQUIREMENT THAT WOSBS MUST ALSO COMPETE IN THE SB SOLICITATION POOL IS UNLAWFUL AND ARBITRARY

49. SHS realleges and incorporates the allegations of the preceding paragraphs by reference as if fully set forth herein.

50. The Solicitation requirement that WOSBs must also compete for the SB pool is unreasonable. Nothing in the WOSB Pool or Small Business Pool Solicitation prohibits an agency from issuing task orders only against the Small Business Pool. The Agency's decision to create a Small Business Pool and require WOSBs to also submit a separate bid to be eligible for award under the Small Business Pool contradicts the purpose of the set-aside categories.

51. The Solicitation says that task orders will be issued against the master contract. (Solicitation, p. 28.) But, nothing in the WOSB Pool or Small Business Pool Solicitations prohibit an agency from issuing task orders only against the Small Business Pool. In fact, the Solicitation demands the opposite: the "Fair Opportunity process shall be *specific to the individual Pool being competed, and may not be combined with any other Polaris Pools* (SB,

11

HUBZone, SDVOSB, WOSB)." (Solicitation, p. 29.) (emphasis supplied.) This is unduly restrictive and unreasonable.

52. For example, a task order procuring agency can issue a task order solicitation for total small business under the Polaris SB Pool, which means a Polaris WOSB Pool awardee is not allowed to bid where it is not a Small Business Pool awardee. That is illogical; an WOSB is a small business. It also is unreasonable in light of the Agency's self-scoring system, which almost guarantees that the score for awards under the Small Business Pool will likely be much, much higher than the socio-economic WOSB Pool. The Agency's decision to create a Small Business Pool *and require* WOSBs to also submit a separate bid to be eligible for award under the Small Business Pool contradicts the purpose of the set-aside categories, and is unduly restrictive and unreasonable.

## COUNT FOUR
### THE SOLICITATION ARBITRARILY AND UNLAWFULLY EXPANDS THE AGENCY'S PRICING DEVIATION

53. SHS realleges and incorporates the allegations of the preceding paragraphs by reference as if fully set forth herein.

54. The Agency is using its exception not to evaluate price in an unlawfully expansive manner.

55. The Agency does not intend to evaluate pricing in Polaris at the IDIQ level. The Agency is using 41 U.S.C. § 3306(c)(3) and Agency Class Deviation CD-2020-14 to do so. But these rules are limited to contracts for **hourly rates**.

56. 41 U.S.C. § 3306(c) says:

> If an executive agency issues a solicitation for one or more contracts for services to be acquired on an hourly rate basis under the authority of sections 4103 and 4106 of this title or section 152(3) of this title and section 501(b) of title 40 and the executive agency intends to make a contract award to each qualifying offeror and the contract or contracts will feature individually competed task or delivery orders **based on hourly rates**—
>
> (A) the contracting officer need not consider price as an evaluation factor for contract award; and
>
> (B) if, pursuant to subparagraph (A), price is not considered as an evaluation factor for contract award, cost or price to the Federal Government shall be considered in conjunction with the issuance pursuant to sections 4106(c) and 152(3) of this title of any task or delivery order under any contract resulting from the solicitation.

(Emphasis supplied.)

57. Agency Class Deviation CD-2020-14 approved a class deviation from the FAR requirement to consider price as an evaluation factor for the award of IDIQs for services purchased **on an hourly rate basis**.

58. The Agency can use this deviation for time and materials and labor rate contracts. However, it intends to use Polaris for the award of fixed-price, cost-reimbursement, incentive contract, time and materials, and / or labor hour task orders. (Solicitation, pp. 4, 117.) The Agency cannot do this. It must either limit task orders to hourly rate awards or consider price as part of its evaluation scheme.

## PRAYER FOR RELIEF

WHEREFORE, SHS requests that this Court:

A. Enter a preliminary injunction prohibiting the award of the contract under the Solicitation.

B. Declare that the Agency's solicitation was ambiguous, unduly restrictive, arbitrary, irrational, and contrary to law, and require the Agency to revise the Solicitation to comply with applicable law.

C. Permanently enjoin the performance of the award of any contract under the Solicitation.

D. Award SHS such other and further relief as the Court may deem just and proper, including, without limitation, bid and proposal costs.

Dated: October 7, 2022                                    Respectfully submitted,


                                                          s/ Jon D. Levin
                                                          Jon D. Levin
                                                          W. Brad English
                                                          Emily J. Chancey
                                                          Joshua B. Duvall
                                                          Nicholas P. Greer

                                                          *Attorneys for Plaintiff SH Synergy, LLC*

**OF COUNSEL:**

MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street SW
Huntsville, Alabama 35801
Telephone:	(256) 512-5747
Cell:	(703) 231-3247
Facsimile:	(256) 512-0119
Email: jlevin@maynardcooper.com

**Certificate of Service**

I hereby certify that on October 7, 2022, I caused copies of the foregoing to be served by electronic mail upon the following:

> U.S. Department of Justice
> Commercial Litigation Branch
> National Courts Section
> P.O. Box 480
> Ben Franklin Station
> Washington, D.C. 20044

/s/ Jon D. Levin
Jon D. Levin
